# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                      Case No. 05-CR-213

**COREY HUDSON**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Corey Hudson pleaded guilty to conspiracy to distribute five grams or more of cocaine base. A pre-sentence report ("PSR") was prepared, which calculated defendant's offense level as 29 (base level 32, U.S.S.G. § 2D1.1(c)(4), minus 3 for acceptance of responsibility, § 3E1.1), and his criminal history category as V, producing an imprisonment range of 140-175 months under the sentencing guidelines. Defendant objected to the drug weight, moved for a horizontal departure under U.S.S.G. § 4A1.3, and requested a non-guideline sentence concurrent with a state term he was then serving. In this memorandum, I set forth the reasons for the sentence imposed.

### I. SENTENCING PROCEDURE

In light of <u>United States v. Booker</u>, 543 U.S. 220 (2005), I follow a three-step sentencing procedure. First, I determine the applicable advisory guideline range, resolving any factual disputes and PSR objections necessary to that determination. Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply. Finally, I determine the

appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a).  See, e.g., United States v. Pallowick, 364 F. Supp. 2d 923, 925-26 (E.D. Wis. 2005).

## II. GUIDELINE DETERMINATION

The PSR set the drug weight at 113 grams based on four transactions of one to two ounces defendant engaged in with Donte Jordan, his supplier, in March 2005. Defendant objected, arguing that he recalled engaging in three transactions with Jordan, each involving one ounce, which would total about 80 grams. However, in the plea agreement defendant admitted that he obtained between one and two ounces of cocaine on four occasions in March 2005. Assuming that each transaction involved one ounce, the total was 113 grams, as the PSR found. The weight could have been as high as 226 grams (creating a base level of 34) if the deals had involved two ounces each. The parties' plea agreement stipulated that the drug weight was at least 80 grams of crack, so a higher figure was not to the contrary.

I further noted that in the plea agreement defendant admitted obtaining distribution level quantities of cocaine from Jordan and another supplier, Donald Chambers, in the late 1990s and early in the following decade, before their drug trafficking relationship was interrupted by defendant's imprisonment on another matter in 2003. Thus, the figure used in the PSR seemed extremely conservative, if not low. Thus, I overruled the objection, which in any event did not affect the guidelines.

## III. DEPARTURE MOTION

Defendant next requested a horizontal departure under U.S.S.G. § 4A1.3(b)(1). The court can depart under § 4A1.3(b) if reliable information indicates that the defendant's

2

criminal history category substantially over-represents the seriousness of his criminal history or the likelihood that he will commit other crimes. In ruling on such a motion, the court can consider the age of the prior offenses; the defendant's age at the time he committed them; whether the prior offenses were committed while the defendant was under the influence of drugs or alcohol; the circumstances of the defendant's prior convictions, i.e. whether they were petty or non-violent; the length of the prior sentences; what was going on in the defendant's life at the time he committed the prior offenses; and the closeness in time of the prior offenses, i.e. whether they were they part of one "spree." United States v. Eisinger, 321 F. Supp. 2d 997, 1006 (E.D. Wis. 2004) (citing United States v. Hammond, 240 F. Supp. 2d 872, 877 (E.D. Wis. 2003)). These factors help the court determine the ultimate question – whether the category assigned accurately reflects the defendant's past misconduct and the risk that he will re-offend. Id.

In the present case, defendant had 10 criminal history points, which placed him in category V. However, 6 of those points stemmed from one offense, his only prior felony. In 2003, defendant was convicted of felony theft stemming from his receipt and deposit of two stolen, closed account checks totaling $5750. Those checks were deposited into defendant's checking account, apparently by an accomplice, and defendant then withdrew $3426 from the account. There was no indication that defendant stole the checks or came up with the idea. He merely endorsed them – the accomplice made them out to defendant – and allowed them to be deposited into his checking account via an ATM. Defendant was sentenced to two years in prison for this offense, so it counted for 3 criminal history points itself. He then received 3 more points under § 4A1.1(d) & (e) because he committed the

3

instant offense while on extended supervision for the theft offense and within two years of his release from prison.

Given the relatively minor nature of the theft offense, defendant's inferior role in it, and the relatively slight sentence, I concluded that attributing a total of 6 points to it substantially over-represented the seriousness of defendant's criminal history. Category V is usually reserved for those with multiple, serious felony records. Here, defendant had just one felony, and a minor one at that. See United States v. Paulino-Duarte, No. 00 CR 686, 2001 U.S. Dist. LEXIS 3208, at *8-13 (S.D.N.Y. Mar. 26, 2001) (departing from category V where defendant had only two minor felony convictions); United States v. Leviner, 31 F. Supp. 2d 23, 32-33 (D. Mass 1998) (departing where, despite absence of serious prior felony convictions, defendant was in category V).

I also noted that 3 of defendant's 4 remaining criminal history points were for marijuana possession offenses. Two of these four offenses were prosecuted as civil forfeiture case in which defendant was not represented by counsel, and one was entered by default. It appeared that at the time defendant committed these offenses he had a serious marijuana problem, as documented in ¶ 82 of the PSR. Given the minor nature of these offenses, the contribution of his addiction to their commission, his efforts at drug treatment while imprisoned in 2003 and 2004,[1] and the fact that two of the offenses were un-counseled forfeiture cases, I found that the inclusion of these offenses also resulted in a category that substantially over-represented the seriousness of his criminal history and the likelihood that he would commit other crimes. See United States v. Nelson, 166 F.

---

[1] The PSR indicated that defendant completed the Earned Release Program ("ERP") in state prison, which involved six months of treatment. (PSR ¶ 83.)

Supp. 2d 1091, 1096 (E.D. Va. 2001) (departing where criminal history score was inflated by minor non-violent offenses, including marijuana possession); United States v. Wilkes, 130 F. Supp. 2d 222, 239 (D. Mass. 2001) (departing from category III to I where defendant had two convictions for minor drug offenses and received additional points because his participation in the instant offense began while he was still under supervision, where both of the priors arose from the same self-destructive behavior that led to the instant prosecution); United States v. Simpson, No. 95 CR 562, 1997 U.S. Dist. LEXIS 7477, at *10 (N.D. Ill. May 21, 1997) (departing from category V to omit un-counseled marijuana possession conviction).

Under all of the circumstances, I found that category III more accurately described defendant's record and the likelihood that he would re-offend. I reached this result by finding that the theft offense, combined with the timing of the instant offense, should fairly count for 3 points, and the remaining offenses for 3 points.

Therefore, with the departure, the range became 108-135 months.

## IV. SENTENCE

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed–

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

My ultimate task is, after considering all of the above circumstances, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2).

## A. Nature of Offense

Defendant was involved in obtaining cocaine from Jordan and Chambers from 1996 to 2003, when he was sent to prison for theft. After his release in December 2004, he linked up with Jordan again, and in March 2005 he bought crack cocaine from Jordan four times, in moderate amounts. There was no indication of weapon possession, violence or threats, so the offense was not aggravated in that sense, but the record showed that defendant was involved in dealing drugs for a significant period of time and was not deterred by a two year prison term. It appeared that in the hierarchy of this conspiracy he was a fairly low level participant.

## B. Character of Defendant

Defendant was 29 years old, with a fairly significant record, as discussed above, but only one prior felony and no history of violence. He had little or no recent employment to

6

speak of, and admitted that he supported himself by dealing and relying on his girlfriend. He dropped out of high school and had not obtained a GED.

However, there were positive aspects to his character. He was the father of a nine-year-old daughter, and she wrote that he was a good father and her best friend. Her mother similarly stated that, although she and defendant were teens when she became pregnant, defendant had been a good father, and he dropped out of school and stayed with the baby in order to allow her to continue with her education. She stated that he got a part-time job at County Stadium to support the family but turned to drug dealing because he was not making enough money. She stated that even after they separated, defendant remained involved in their daughter's life.

Defendant's current girlfriend also wrote a supportive letter. She stated that defendant was a positive influence on her three kids, all of whom were in school and doing quite well academically, for which she credited defendant. She also stated that she and defendant took children on trips to Wisconsin Dells, Imax, and Great America, and that defendant encouraged them to treat others respectfully. Defendant's sister also had good things to say about him. Finally, I noted that defendant made efforts to cooperate with the government, debriefing twice and providing all of the information he had about the offense.

**C.    Needs of Public**

There was no indication that defendant was physically dangerous, but there was some risk of recidivism given his record. There was also a need for a substantial period of confinement to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter others. Defendant appeared to have some educational needs – he had to get his GED – and some substance abuse issues. I attempted to deal

7

with those issues through recommendations to the Bureau of Prisons and conditions of supervised release. There was no way under the circumstances to address them in the community. There was no restitution due.

**D. Consideration of Guidelines**

The guidelines called for a term of 108-135 months. I concluded that a sentence within that range was somewhat greater than necessary to satisfy the purposes of sentencing. The range did not account for defendant's positive personal characteristics, including his support for his family, the strength of character he showed as a teenaged father as reflected in his daughter's and her mother's letters, his positive influence on children, and the positive character development reflected by his attempts to cooperate with the government. I concluded that it was appropriate to, in effect, reduce the offense level by about two to account for these factors.[2] See, e.g., United States v. Page, No. 04-CR-106, 2005 U.S. Dist. LEXIS 19152, at *12 (E.D. Wis. Aug. 25, 2005) (reducing sentence to account for positive characteristics not accounted for by the guidelines; United States v. Ranum, 353 F. Supp. 2d 984, 986, 991 (E.D. Wis. 2005) (same).

Defendant also asked for a non-guideline sentence to account for the disparity between crack and powder cocaine. I have in past cases, relying primarily on information compiled by the Sentencing Commission, concluded that the 100:1 crack to powder ratio incorporated into the guidelines lacks any persuasive penological or scientific justification and creates a racially disproportionate impact. See, e.g., United States v. Smith, 359 F. Supp. 2d 771, 777-82 (E.D. Wis. 2005). Defendant asked me to sentence him according

---

[2]The parties both recommended a non-guideline sentence, defendant within the range of 70-84 months, and the government in the range of 84-96 months.

to the 20:1 ratio I used in Smith. In this case, use of that ratio would have produced a base level of 28 rather than 32: (113g of crack x [200g THC x 20 = 4000g THC] = 452 kg of THC).

However, under the particular circumstances of this case, I declined to exercise my discretion to account for this disparity. See United States v. Gipson, 425 F.3d 335, 336 (7th Cir. 2005) (holding that the district court is not required to account for the crack/powder disparity). The drug weight attributed to defendant in the PSR was low, as it did not account for the fact that defendant admittedly obtained distribution level quantities of cocaine from Jordan and Chambers between 1996 and 2003. Reducing the sentence further based on drug weight would have failed to account for the additional powder defendant admittedly trafficked in prior to 2003. Cf. United States v. Peralta-Espinoza, 383 F. Supp. 2d 1107, 1112 (E.D. Wis. 2005) (declining to reduce sentence based on disparity created by "fast-track" programs, based on other factors in the case).

**E.    Concurrent Sentence**

After he was arrested for the instant offense, defendant's state extended supervision on the theft case was revoked. Defendant asked me to run the instant sentence concurrent with the sentence he was then serving in state prison after revocation. That sentence of 34 months was determinate and was imposed on September 19, 2005. Under 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3(c), I had discretion to impose the instant sentence concurrent or consecutive. Considering the factors set forth in § 3553(a), I imposed the sentence to run concurrently. First, the revocation resulted primarily from defendant's arrest on the instant matter, thus the offenses were to that extent related. Second, none of the purposes of sentencing were served by running the sentence consecutive. Running

9

the sentence concurrent resulted in about four years of additional confinement, which adequately served the public's interest in punishment and was sufficient to deter defendant and others from criminality.

## V. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 84 months, to run concurrent with the sentence in State of Wisconsin Case No. 03-CF-2484. I found this sentence, which was consistent with both parties' recommendations, sufficient but not greater than necessary. I recommended any drug treatment and educational programs available, including the 500 hour program. Based on his financial situation, I determined that defendant did not have the ability to pay and so waived the fine.

Upon release, I ordered him to serve a four year supervised release term, with conditions that he participate in a drug treatment program and obtain his GED or HSED. Other conditions appear in the judgment.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin, this 14th day of February, 2006.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge